UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| THE MICHEL FAMILY TRUST, <br><br> Plaintiff, <br><br> v. <br><br> TRAVELERS INDEMNITY COMPANY OF CONNECTICUT, et al. <br><br> Defendants. | Case No.: C 09-4144 PSG <br><br> **ORDER DENYING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT AND DENYING DEFENDANT'S MOTION FOR PARTIAL SUMMARY JUDGMENT** <br><br> **(Re: Docket No. 39)** |

    Plaintiff Michel Family Trust (the "Trust") applied for benefits under its insurance policy, issued by Defendant Travelers Indemnity Company of Connecticut ("Travelers"), after its commercial property was damaged by a fire on August 16, 2004. On June 8, 2006, the Trust brought this action for breach of contract, alleging that Travelers has failed to compensate it for the full amount of the covered loss.

    Travelers seeks summary judgment in whole or in part, contending that the undisputed facts show that Travelers has fulfilled its duties under the insurance contract, or at a minimum, that the Trust is not entitled to certain benefits as a matter of law. The court has considered the moving and responding papers and the oral argument of counsel presented at the hearing on December 14, 2010. For the reasons discussed below, Travelers' motion for summary judgement is DENIED and its motion for partial summary judgment also is DENIED.

# I. BACKGROUND[1]

The parties agree that Travelers issued commercial property insurance policy number I-660-853X1500 (the "policy") to the Trust for the property located at 1093-1099 W. San Carlos Ave. (the "property"), effective from March 27, 2004 until March 27, 2005.[2] During that policy period, the property was a commercial property that consisted of four tenant spaces: a market, a pawn shop, a staffing business, and a bar. In the early morning hours of August 16, 2005, a fire began in the bar and caused significant damage to the interior of the bar and the staffing business and minor damage to the exterior and roof of the bar and the staffing business. The market and the pawn shop were not damaged. The Trust reported the loss to Travelers that afternoon.

**A. Policy Provisions Covering Loss of Business Income**

The Business Income Coverage Form of the policy, provides in relevant part:

> [Section A: Coverage]
> We will pay for the actual loss of Business Income you sustain due to the necessary suspension of your "operations" during the "period of restoration." The suspension must be caused by direct physical loss of or damage to the property . . .
>
> [Section G: Definitions]
> 2. "Operations" means the type of your business activities occurring at the described premises
> 3. "Period of Restoration" means the period of time that:
>     a. Begins with the date of direct physical loss or damage caused by or resulting from any Covered Cause of Loss at the described premises; and
>     b. Ends on the date with the property at the described premises should be repaired rebuild or replaced with reasonable speed and similar quality.
> "Period of restoration" does not include any increased period required due to the enforcement of any ordinance or law that:
>     (1) Regulates the construction, use or repair, or requires the tearing down of any property . . .

**B. Policy Provisions Covering Damage to the Building**

The Building and Personal Property Coverage Form of the policy, concerning coverage for physical loss or damage to the property, provides in relevant part:

> [Section E(4): Loss Payment]
> a. In the event of loss or damage covered by this Coverage Form, at our option, we will either:
>     (1) Pay the value of lost or damaged property;

---

[1] Unless otherwise indicated, all facts included in this section can be found in the Joint Statement of Undisputed Facts (hereinafter SUF).

[2] *See* SUF Ex. 1.

>   (2) Pay the cost of repairing or replacing the lost or damaged property;
>   (3) Take all or any part of the property at an agreed or appraised value; or
>   (4) Repair, rebuild or replace the property of like kind and quality. . .
>
>   [Section E(6): Valuation]
>   We will determine the value of Covered Property in the event of loss or damage as follows:
>   a. At actual cash value as of the time of loss or damage . . .

The Trust also chose optional replacement cost coverage for the property. The Optional Coverages section of the Building and Personal Property Coverage Form of the policy, provides in relevant part:

>   [Section G(3): Replacement Cost]
>   a. Replacement Cost (without deduction for depreciation) replaces Actual Cash Value in the Loss Condition, Valuation, of this Coverage Form. . .
>   c. You may make a claim for loss or damage covered by this insurance on an actual cash value basis instead of on a replacement cost basis.  In the event you elect to have loss or damage settled on an actual cash value basis, you may still make a claim for the additional coverage this Optional Coverage provides, if you notify us of your intent to do so within 180 days after the loss or damage.
>   d. We will not pay on a replacement cost basis for any loss or damage:
>       (1) Until the lost or damaged property is actually repaired or replaced; and
>       (2) Unless the repairs or replacement are made as soon as reasonably possible after the loss or damage.
>   e. We will not pay more for loss or damage on a replacement cost basis than the least of:
>       (1) The Limit of Insurance applicable to the lost or damaged property;
>       (2) The cost to replace, on the same premises, the lost or damaged property with other property:
>           (a) Of comparable material and quality; and
>           (b) Used for the same purpose; or
>       (3) The amount you actually spend that is necessary to repair or replace the lost or damaged property.

The Ordinance or Law Coverage policy provision, Section B(1) of the Building Owners Extra Form, which adds coverage to the Building and Personal Property Coverage Form, provides in relevant part:

>   a. If a Covered Cause of Loss occurs to a Covered Building we will pay . . .
>       (2) When the Covered Building is insured for replacement cost, the increased cost to repair, rebuild or construct the property caused by enforcement of building, zoning or land use ordinance or law. . .
>   d. We will not pay for increased construction costs under this coverage:
>       (1) Until the property is actually repaired or replaced, at the same location or elsewhere if required by ordinance or law; and
>       (2) Unless the repairs or replacement are made as soon as reasonably possible after the loss or damage, not to exceed two years.

**C. Payments, Repairs, and the Instant Action**

According to the Trust, in briefs and at oral argument, repairs to the property are

underway and repairs to the damaged exterior would soon be complete.[3] The parties agree that Travelers has paid $463,640.33 for the "actual cash value" of the cost to repair the property damaged by the fire. The first of these payments was made August 20, 2004, and the last was made September 28, 2010. The Trust claims as lost business income the rent it would have collected from its commercial tenants if not for the fire damage. Travelers has paid the Trust $79,701.96 for lost rent covering eight and a half months from August 16, 2004 through April 30, 2005. On June 8, 2007, Travelers sent the Trust a letter stating that "Travelers is closing its investigation of this matter . . . We have paid the actual cash value of the verified damages and the verified loss of rental income."[4] Referring to an excerpt from the policy titled "Legal Action Against Us," the letter explains that "Travelers interprets the time remaining to the insured to make a further claim for policy benefits arising from this loss to expire by June 8, 2009."[5]

On June 8, 2009, the Trust filed suit against Travelers in the Superior Court of California, County of Santa Clara, alleging that Travelers was liable for breach of contract, breach of the implied covenant of good faith and fair dealing, and negligence.[6] Travelers removed the case to this court based upon diversity jurisdiction.[7] The parties stipulated to dismiss with prejudice the Trust's claims for breach of the covenant of good faith and fair dealing, negligence, and punitive damages.[8] The only remaining cause of action is the Trust's claim for breach of contract, alleging that Travelers has not paid the full benefits owed under the insurance policy.

On September 28, 2010, Travelers filed a motion for summary judgment, arguing that the Trust cannot show it breached any contractual duty to pay benefits either for building damage or for lost rent. Alternatively, if the motion for summary judgment is unsuccessful, Travelers seeks

---

[3] *See* Opp'n Def.'s Am. Mot. Summ. J. at 2:20-1.

[4] SUF Exh. 31.

[5] SUF Exh. 31.

[6] *See* SUF Exh. 47.

[7] *See* Notice of Removal of Action ¶ 4.

[8] *See* Stipulation and Order to Dismiss Pl.'s Claims for Breach of the Covenant of Good Faith and Fair Dealing, Negligence and Punitive Damages with Prejudice (Docket No. 31).

ORDER, *page 4*

a partial summary judgment order specifying that under the terms of the insurance policy: (1) the Trust is not entitled to replacement cost benefits until the property is actually repaired or replaced with property of comparable material and quality and the amount the Trust actually spends exceeds $463,640.33; (2) the Trust is not entitled to recover ordinance or law benefits because the property was not actually repaired or replaced before August 16, 2006; (3) and Travelers had no duty to repair, rebuild, or replace the fire-damaged property.

## II. LEGAL STANDARD

Summary judgment should be granted only when there are no genuine issues of material fact and the moving party is entitled to judgment as a matter of law.[9] The moving party bears the initial burden of informing the court of the basis for the motion and identifying the portions of the pleadings, depositions, or other evidence that demonstrate the absence of a triable issue of material fact.[10]

If the moving party meets this initial burden, the burden shifts to the non-moving party to present specific facts showing that there is a genuine issue for trial.[11] To carry this burden, the non-moving party must "do more than simply show that there is some metaphysical doubt as to the material facts."[12] "The mere existence of a scintilla of evidence . . . will be insufficient."[13] A genuine issue for trial exists if the non-moving party presents evidence from which a reasonable jury, viewing the evidence in the light most favorable to that party, could resolve the material issue in his or her favor.[14] A dispute is "material" only if it could affect the outcome of the suit under the governing law.[15]

Under Fed. R. Civ. P. 56(d), "[i]f summary judgment is not rendered on the whole action,

---

[9] *See* Fed. R. Civ. P. 56(c), *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986).

[10] *See Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).

[11] *See* Fed. R. Civ. P. 56(e), *Celotex*, 477 U.S. at 324.

[12] *See Matsushita Electric Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986).

[13] *Anderson*, 477 U.S. at 252.

[14] *See id* at 252.

[15] *See id.* at 248-49.

the court should, to the extent practicable, determine what material facts are not genuinely at issue . . . It should then issue an order specifying what facts including items of damages or other relief are not genuinely at issue. The facts so specified must be treated as established in the action." Because this Court's subject matter jurisdiction is based on diversity of citizenship between the parties, the substantive law of the forum state governs the instant dispute.[16] Under California law, "[w]here the terms and conditions of an insurance policy constitute the entire agreement between the parties, its interpretation is essentially a question of law, particularly well-suited for summary judgment."[17]

### III. DISCUSSION

The issues before the court are:

(1) whether Travelers has shown that there is no genuine issue of material fact relating to the alleged breach of the business income policy provisions,

(2) whether Travelers has shown that there is no genuine issue of material fact relating to the alleged breach of the building damage policy provisions,

(3) whether, under the terms of the policy, the Trust is not entitled to replacement cost benefits until the property is actually repaired or replaced with property of comparable material and quality and the amount the Trust actually spends exceeds $463,640.33,

(4) whether, under the terms of the policy, the Trust is not entitled to recover ordinance or law benefits because the property was not actually repaired or replaced before August 16, 2006.

(5) whether, under the terms of the policy, Travelers had no duty to repair, rebuild, or replace the fire-damaged property.

**A.  Breach of Business Income Policy Provisions**

Travelers has paid the Trust $79,701.96 for lost rental income covering eight and a half months.[18] Travelers argues that the Trust has failed to raise a triable issue of fact that would

---

[16] *See Erie R. R. Co. v. Tompkins*, 304 U.S. 64, 78 (1938).

[17] *State Farm Fire & Cas. Co. v. Yukiyo, Ltd.*, 870 F. Supp. 292, 294 (N. D. Cal. 1994) (citing *St. Paul Fire & Marine Ins. Co. v. Weiner*, 606 F. 2d 864, 867 (9th Cir. 1979)).

[18] *See* SUF ¶¶ 11, 20.

indicate more money is owed under the policy. Specifically, Travelers argues that the Trust has produced nothing to show that the restoration period should be longer than eight and a half months. The Trust argues that repairing the property with reasonable speed and similar quality required more than eight and a half months because of Travelers' delays. If Travelers underestimated the restoration period, the Trust contends that Travelers has not paid the full benefits owed under the policy and could be held in breach.

Travelers bears the initial burden of showing that there is no triable issue regarding whether the restoration period exceeds eight and a half months. The length of the restoration period during which the property should have been repaired with reasonable speed is material to whether Travelers has paid all business income due under the contract. In support of Travelers' argument that the restoration period is at most eight and a half months, Travelers cites the deposition of Ron Rodriquez, the project manager for the contractor working for the Trust. Mr. Rodriquez testified that the repairs could have been completed in five months, and seven months were necessary only because of rain delays.[19] On February 9, 2006, however, David Goble ("Goble"), an adjuster at Travelers, sent a letter to Gabriel Michel ("Michel"), the Trust's trustee.[20] The letter states that "[Travelers] estimate[s] the period of restoration to be twelve months."[21] It appears from this letter that Travelers' estimate is based on information from Travelers' own cost consultant. This letter indicates that Travelers' internal personnel responsible for determining the length of the restoration period believed the appropriate length was twelve months instead of the eight and a half months for which Travelers has paid the Trust.

At a minimum, Goble's letter raises a genuine issue as to the correct duration of the restoration period. A reasonable fact-finder, viewing this evidence in the light most favorable to the Trust, could resolve that the restoration period is longer than eight and a half months and that the Trust is owed additional rent. Thus, summary judgment is not appropriate regarding whether Travelers breached the contract with respect to payment of lost business income.

---

[19] *See* Delaney Aff. ¶ 4, Ex. C at 72-74.

[20] *See* SUF Ex. 22.

[21] SUF Ex. 22 at 5.

**B. Breach of Building Damage Policy Provisions**

According to the policy, until the property is repaired, the Trust is owed only the "actual cash value" of the cost of repairs as of the time of the fire, which is defined as replacement cost less depreciation.[22] Under the contract, the Trust is entitled to the replacement cost value only after the repairs are made.  Replacement cost is the lesser of either the cost to replace the damaged property with property of comparable material and quality to be used for the same purpose, or the amount actually spent that is necessary to repair the damaged property.

If Travelers has paid the Trust more than the Trust has actually spent to repair the damaged property, then Travelers would have satisfied its obligations under the replacement cost provision. The parties agree that Travelers has paid Plaintiff $463,640.33 for the actual cash value of the cost to repair the property damaged by the fire.[23]  The parties disagree whether the Trust has presented any evidence that it has actually spent more than $463,640.33.

On June 14, 2010, in its interrogatory responses, the Trust stated that it had expended only $210,034.98.[24]  Based on this response, Travelers' argues that the Trust has spent less than what it has been paid.  Thus, Travelers argues that the Trust has not raised a genuine issue of fact that would indicate more money is owed under this provision of the policy.

In opposition, the Trust submitted a declaration from Michel.[25]  In this declaration, Michel claims on behalf of the Trust to have "paid out of pocket in excess of $528,825.26 for repairs."[26]

---

[22] *See* Am. Mot. Summ. J. at 4.

[23] *See* Am. Mot. at 2:5 and Opp'n at 3:5.

[24] *See* DeLaney Aff. Ex. B at 2.

[25] Travelers raises objections against many portions of the declaration that are not essential to the resolution of its motion.  Once enough evidence is found admissible to defeat the summary judgment, it is unnecessary to rule on objections to the remainder.  *See Howard v. Nat'l R.R. Passenger Corp.*, No. C 05-4069, 2007 WL 1288197, at *11 (N.D. Cal. Apr. 30, 2007).  Therefore, the court will not rule on objections to evidence upon which this order does not rely.

[26] Michel Decl. ¶ 24.  Michel states that the expenses were for repairs but does not specifically state they were for repairs *to damage to the property caused by fire*.  From the context, a reasonable jury might conclude, however, that Michel is referring to repairs to damage to the property caused by fire.         Travelers objects to Michel's statement about what out of pocket expenses he paid on behalf of the Trust.  He claims that the Trust paid $528,825.26 overall for repairs to damage caused by the fire and $253,032.40 specifically to the construction company.  Travelers argues the statement is inadmissible opinion testimony regarding the amount necessary to repair damage caused by the fire.

Although the Trust's June 14, 2010 response to interrogatories indicates that only $210,034.98 had been spent on repairs, the discrepancy between this response and Michel's declaration on October 12, 2010 was explained by the Trust at oral argument as reflecting construction that took place during those intervening four months.

If viewed in the light most favorable to the Trust, the statement in the declaration regarding the amount the Trust has spent on repairs is sufficient evidence for a reasonable jury to conclude that the amount the Trust actually spent that was necessary to make repairs exceeds $463,640.33. "Credibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of a judge [when the judge] is ruling on a motion for summary judgment."[27] By this declaration, the Trust has raised a genuine issue as to whether the amount the Trust actually spent that was necessary to make repairs exceeds the amount Travelers paid to the Trust. Summary judgment on this issue would therefore be inappropriate.

**C. Interpreting Contract Language Regarding Replacement and Repair Costs**

The insurance policy provides that the Trust cannot recover replacement cost benefits for its building loss "until the lost or damaged property is actually repaired or replaced."[28] The Trust may then recover only the lesser of either (1) "the cost to replace, on the same premises, the lost or damaged property with other property of comparable material and quality and used for the same purpose"[29] or (2) "the amount [the Trust] actually spend[s] that is necessary to repair or

---

Travelers argues that only an expert with specialized construction knowledge is permitted to offer opinion testimony regarding the cause of the damage, the repairs necessary to fix that damage, or the cost of those repairs. Michel, however, does not declare his opinion as to these matters; he merely declares his personal knowledge as Trustee regarding what the Trust has paid and for what intended purpose. He can testify that he sought to hire a contractor to make repairs to the fire damage and has paid $253,032.40 to that contractor, in the same manner that he can testify that he spent the other $275,792.86 to buy permits, hire design companies, and other expenses associated with making repairs. Therefore, Travelers' objection to the statement as improper opinion testimony is overruled.

[27] *Anderson*, 477 U.S. at 255 (1986).

[28] SUF Ex. 1, Building and Personal Property Coverage Form at G(3)(d)(1).

[29] SUF Ex. 1, Building and Personal Property Coverage Form at G(3)(e)(2) (internal punctuation omitted).

replace the lost or damaged property."[30]

Travelers seeks an order that, under the terms of the policy, "[the Trust] is not entitled to recover replacement cost benefits for the building loss until the fire-damaged property is actually repaired or replaced with property of comparable material and quality, and if the amount [the Trust] actually spends for those repairs exceeds the $463,640.33 in building loss Policy benefits already paid by Travelers."[31]

In the policy, the condition that property be replaced with other property "of comparable material and quality" limits only one basis upon which the amount of the replacement cost could be calculated[32]; Travelers' interpretation imports this language to create a new condition on receiving any payment at all.  If, for example, the Trust replaced the damaged property with property of a different material and quality, under the policy, it would receive replacement cost benefits, although the amount may be less than what it actually spent.  Under Travelers' interpretation, however, the Trust could not be paid at all because it neither repaired the property nor replaced it with comparable material and quality.  This interpretation is inconsistent with the plain language of the policy.  Therefore, Travelers' request that the policy language be interpreted in this manner must be denied.

**D. Interpreting Contract Language Regarding Ordinance or Law Costs**

The insurance policy covers increased constructions costs due to the enforcement of particular laws or ordinances. Those benefits are not paid until the property is actually repaired or replaced, and "unless the repairs are made as soon as possible after the loss or damage, not to exceed two years."  Travelers asks the court to find that, under the terms of the contract, the Trust is not entitled to recover for ordinance or law costs because the building was not repaired by August 16, 2006, two years after the fire.

The Trust argues that Travelers prevented it from performing its obligations under the contract to make the repairs within two years from the date of the fire.  That fact is material to

---

[30] SUF Ex. 1, Building and Personal Property Coverage Form at G(3)(e)(3).

[31] Am Mot. at 18:12-17

[32] *See* SUF Ex. 1, Building and Personal Property Coverage Form at G(3)(e)(2).

whether the Trust is entitled to ordinance and law coverage because under California law "where one contracting party prevents the other's performance of a condition precedent, the party burdened by the condition is excused from performing it, and the benefitted party's duty of performance becomes unconditional."[33] If Travelers prevented the Trust from making repairs within two years, then the Trust is excused from that condition of the contract, and Travelers must pay appropriate ordinance or law costs.

The parties agree that Goble sent Michel a letter on September 21, 2004 that states,

> "I explained to you early in the claim process that in order for Travelers to agree the policy owes you anything we have to be able to examine the cost and scope of work presented prior to its commencement. Otherwise, we cannot promise to pay what you incur if we later have question over either scope or price."[34]

The parties also agree that, on January 7, 2005, five months after the fire, Goble sent two letters to Michel. The first letter provides cost estimates for repairing the building.[35] The second letter states that "[i]t has taken Travelers some time, since the conclusion of demolition, to conclude the cost estimate . . . We have agreed to pay for the delay caused by Travelers in procuring our scope of damages and cost estimate."[36]

According to Michel's declaration, on January 10, 2005, he informed Goble that these estimates "were not acceptable because no reputable builder existed who would do the work for the amounts stated in the estimates."[37] The parties agree that Michel wrote to Goble that the estimates were "unrealistically low,"[38] and, on February 12, 2005, Goble responded that "[s]ince you do not accept our cost estimate as a basis for a replacement cost claim, I have requested another local licensed general contractor to determine their price for the scope of damages."[39]

---

[33] *City of Hollister v. Monterey Insurance Company* (2008) 165 Cal. App. 4th 455, 490.

[34] SUF Ex. 3.

[35] SUF Ex. 8B.

[36] SUF Ex. 8A.

[37] Michel Decl. ¶ 9.

[38] SUF Ex. 11.

[39] SUF Ex. 12 at 2.

This second cost estimate was sent to Michel on September 1, 2005, more than one year after the fire.

The Trust argues that crossing this one-year mark substantially increased the hurdles to making repairs and has delayed construction. Michel declares that the Trust was required to comply with a new set of Architectural and Site Approval ("ASA") requirements because repairs were not made within one year.[40] Attached to the declaration is a copy of the Santa Clara County Building Department ASA Requirements for the repair of the property.[41] This report indicates that a number of changes must be made, including increasing the number of parking spaces, landscaping, and redoing the signs.

Even if Michel's statement that additional requirements apply after one year is inadmissible hearsay,[42] the same information about the county's policy is published in Santa Clara County Zoning Ordinance Chapter 5.40. Under this code, if a use operating under an ASA permit ceases for a period of twelve consecutive months, the ASA permit shall be deemed abandoned and shall automatically terminate.[43] Then a new ASA would be required to establish a commercial, institutional, office, industrial, or multiple family residential use.[44] Travelers argues that the attached statement about ASA requirements also is inadmissible hearsay.[45] This ASA letter, however, is a statement setting forth factual findings resulting from an investigation pursuant to authority granted by law. Therefore, it is admissible hearsay pursuant to the public records and reports exception.[46]

---

[40] Michel Decl. ¶¶ 17-18.

[41] Michel Decl. Ex. L.

[42] Hearsay is "a statement, other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted." Fed. R. Evid. 801(c). Hearsay is inadmissible unless it is defined as non-hearsay under Federal Rule of Evidence 801(d) or falls within a hearsay exception under Rules 803, 804, or 807.

[43] Santa Clara County Zoning Ordinance § 5.40.070.

[44] Santa Clara County Zoning Ordinance § 5.40.020.

[45] Although, the court has held that a portion of ¶ 17 of the Michel Decl. is inadmissible hearsay, the portion of ¶ 17 establishing the attached exhibit has not been held to be inadmissible.

[46] Fed. R. Evid. 803(8).

The undisputed facts, the county ordinance, and the ASA statement provide sufficient evidence upon which a reasonable jury could find that Travelers instructed Michel not to begin construction until after an estimate for the cost of the repairs was agreed upon; that Travelers' delays in providing a cost estimate prevented the Trust from beginning construction within a year; and that after one year passed, new requirements applied that made completing repairs within two years impossible. The Trust thus has raised a genuine issue as to whether Travelers prevented the Trust from completing repairs within two years. Accordingly, the court cannot determine that ordinance and law coverage is precluded as a matter of law.

**E. Interpreting Contract Language Regarding the Duty to Repair**

Under the insurance policy, Travelers has *the option to either* (1) pay the value of lost or damaged property; (2) pay the cost of repairing or replacing the lost or damaged property; (3) take all or any part of the property at an agreed or appraised value; or (4) repair, rebuild or replace the property of like kind and quality.

Travelers asks the court to issue an order stating that, under the terms of the contract, Travelers had no duty to repair, rebuild, or replace the fire-damaged property. It is undisputed that Goble sent a letter to Michel on February 9, 2006 stating that Travelers would pay for the cost of repairing the property but did not opt to repair it themselves. The Trust has offered no evidence that Travelers indicated to it otherwise.

Travelers chose to pay the cost of repairs rather than to make repairs. If Travelers fulfilled that duty, then Travelers has not breached the insurance contract. If, however, Travelers failed to fulfill that duty, then Travelers will have to show that it satisfied one of the other three optional duties it has under the contract to avoid being found in breach. In light of the genuine issues of material facts discussed above, it would be premature to state now that, as a matter of law, Travelers did not have a duty to fulfill any one of those other three options.

## IV.  CONCLUSION

For the reasons elaborated above, a genuine issue exists as to whether the amount of time necessary to repair the property with reasonable speed exceeds eight and a half months, as well as to whether the amount the Trust actually spent on repairs exceeds the amount paid by Travelers.

Travelers' motion for summary judgment is therefore DENIED.

Triable issues of fact also exist as to whether the Trust is entitled to ordinance and law coverage and whether Travelers had a duty to repair the property.  Additionally, Travelers' proposed interpretation of the policy language regarding replacement cost benefits place an unwarranted condition on payment.  Travelers' motion for partial summary judgment is therefore also DENIED.

Dated: January 21, 2011

*[signature]*
PAUL S. GREWAL
United States Magistrate Judge